**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| OREGON PUBLIC EMPLOYEES RETIREMENT FUND; AMALGAMATED BANK, as Trustee for the LongView LargeCap 500 Index Fund, the LongView LargeCap 500 Index VEBA Fund, the LongView Quantitative LargeCap Fund, and the LongView Quantitative LargeCap VEBA Fund; MINEWORKERS' PENSION SCHEME, *Plaintiffs-Appellants*, | No. 12-16624 <br><br> D.C. No. 2:10-cv-01735-JAT <br><br><br> OPINION |
| v. | |
| APOLLO GROUP INCORPORATED; JOHN SPERLING; GREGORY W. CAPPELLI; CHARLES B. EDELSTEIN; GREGORY J. IVERSON; JOSEPH I. D'AMICO; BRIAN L. SWARTZ; BRIAN E. MUELLER; PETER V. SPERLING; WILLIAM J. PEPICELLO, *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
October 10, 2014—Phoenix, Arizona

Filed December 16, 2014

Before: J. Clifford Wallace, Barry G. Silverman,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Securities Fraud

The panel affirmed the district court's dismissal of investors' class action under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5 against Apollo Group, Inc., a for-profit education company, and Apollo officers and directors.

The plaintiffs alleged that the defendants made false and misleading statements of material fact regarding Apollo's enrollment and revenue growth, financial condition, organizational values, and business focus. They also alleged that, during the class period, certain individual defendants traded on inside information related to the false and misleading statements of material fact.

Agreeing with the Fourth Circuit, the panel held that the heightened pleading standards of Fed. R. Civ. P. 9(b) apply to all elements of a securities fraud action, including loss causation.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the material misrepresentations alleged in Counts I, III, and IV of the amended complaint were not objectively false statements, but rather were examples of lawful "business puffing." The plaintiffs also failed adequately to plead scienter or loss causation.

The panel held that, as to Count II, the plaintiffs did not show how Apollo's accounting numbers regarding student revenue were incorrect or misstated.

The panel held that the plaintiffs failed to state a claim for insider trading because the alleged non-public information to which the defendants had access was the same information at issue in Counts I–IV.

The panel held that the plaintiffs also could not establish control person liability.

---

**COUNSEL**

Stuart M. Grant (argued), Grant & Eisenhofer P.A., Wilmington, Delaware, for Plaintiffs-Appellants.

Linda T. Coberly (argued), William P. Ferranti, and Benjamin L. Ellison, Winston & Strawn LLP, Chicago, Illinois; David B. Rosenbaum, Osborn Maledon, P.A., Phoenix, Arizona, for Defendants-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

In this consolidated class action, the Plaintiffs-Appellants (Plaintiffs) represent a class of investors that purchased stock in Apollo Group Inc., between May 21, 2007 and October 13, 2010 (the Class Period). The Plaintiffs allege that the Defendants-Appellees (Defendants), Apollo, a for-profit education company, and Apollo officers and directors, violated section 10(b) of the Securities and Exchange Act and SEC Rule 10b-5. According to the Plaintiffs, the Defendants made false and misleading statements of material fact regarding Apollo's enrollment and revenue growth, financial condition, organizational values, and business focus. The Plaintiffs also allege that, during the Class Period, certain individual Defendants traded on inside information related to the false and misleading statements of material fact. Finally, the Plaintiffs allege that certain officers and directors of Apollo are liable as controlling persons for the misstatements and omissions of their supervisees. The district court dismissed the Plaintiffs' Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). We affirm the decision of the district court for four reasons.

First, the material misrepresentations the Plaintiffs alleged in Counts I, III, and IV of the Amended Complaint are not objectively false misstatements, but are examples of lawful "business puffing." Even if the Plaintiffs adequately alleged a misstatement or omission, they did not adequately plead scienter or loss causation, both of which are independent bases on which to affirm the district court's decision.

Second, Count II contains largely conclusory allegations that Apollo improperly recorded student revenue. The Plaintiffs do not show how Apollo's accounting numbers were incorrect or misstated. Apollo also disclosed to its investors information concerning the collection of revenue and tuition, which negates the Plaintiffs' misstatement and omission theory.

Third, the Plaintiffs' allegations that the Defendants are guilty of insider trading fail to state a claim because the alleged non-public information to which the Defendants had access is the same information at issue in Counts I, II, III, and IV of the Amended Complaint.

Fourth, the Plaintiffs cannot establish control person liability because their control person claim relies on the faulty allegations made in the other counts.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Apollo Group Inc. is an Arizona-based company that owns and operates postsecondary education institutions, and is one of the largest private education providers in the United States. The majority of Apollo's revenue comes from its subsidiary, the University of Phoenix. The remaining Defendants are individuals who served as Apollo officers and directors during the Class Period, between May 21, 2007 and October 13, 2010. The Plaintiffs represent a class of investors who purchased Apollo stock during the Class Period.

Counts I, II, III, and IV of the Plaintiffs' Amended Complaint allege that, during the Class Period, the Defendants made materially false and misleading statements

concerning Apollo's (1) enrollment and revenue growth, (2) financial condition, (3) organizational values, and (4) business focus in violation of section 10(b) of the Securities and Exchange Act and SEC Rule 10b-5. These alleged misstatements appeared in Apollo's filings with the SEC, press releases, and conference calls and interviews. The Plaintiffs also allege that the Defendants failed to disclose material facts necessary to make the statements not misleading.

In Counts V and VII of their Amended Complaint, the Plaintiffs allege that individual Defendants John Sperling, Peter Sperling, Joseph D'Amico, and William Pepicello committed insider trading by trading on non-public information related to the allegedly false and misleading disclosures that Apollo made to its investors.

Finally, in Count VI, the Plaintiffs allege that, during the Class Period, Defendants John Sperling, Peter Sperling, Joseph D'Amico, Gregory Capelli, Charles Edelstein, Brian Swartz, Brian Mueller, and Gregory Iverson violated section 20(a) of the Securities and Exchange Act because each was a controlling person who had direct and supervisory involvement in the daily operations of Apollo. As controlling persons, they would be jointly and severally liable for violations of section 10(b) of the Securities and Exchange Act and Rule 10b-5.

After allowing the Plaintiffs to amend their initial complaint, the district court dismissed the Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Plaintiffs subsequently filed this timely appeal.

**JURISDICTION AND STANDARD OF REVIEW**

We have subject matter jurisdiction pursuant to Section 27 of the Securities and Exchange Act, 15 U.S.C. § 78aa(a), and 28 U.S.C. §§ 1331 and 1337(a). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

We review *de novo* the district court's dismissal of the Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and accept all factual allegations in the Amended Complaint as true. *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011).

**DISCUSSION**

**I.  Legal Standard**

To plead a claim under section 10(b) and Rule 10b-5, the Plaintiffs must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

**A.  PSLRA and Rule 9(b)**

The Plaintiffs incorrectly argue that each of the six elements of their 10(b) claims is subject to the pleading standards of Federal Rule of Civil Procedure 8(a)(2), which requires that "a complaint [] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). Securities fraud class actions must meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14 (2007). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The PSLRA requires that "the complaint shall, with respect to each act or omission . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The PSLRA also requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at § 78u-4(b)(1)(B).

## B.  Pleading Standard for Loss Causation

Although it is clear that Rule 9(b) and the PSLRA apply to almost all elements of a securities fraud action, the law is less clear about the pleading standard that applies to the loss causation element. In *Dura Pharmaceuticals, Inc. v. Broudo*, the Supreme Court suggested that Rule 8's "short and plain statement" might apply: "we assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss." 544 U.S. 336, 346 (2005).

After *Dura*, we have applied a plausibility standard to loss causation, which avoids the question of whether the Rule 8(a) or Rule 9(b) pleading standard applies. *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1053 (9th Cir. 2011) ("It is unclear in this Circuit whether Rule 9(b)'s heightened pleading standard or whether Rule 8(a)(2)'s 'short and plain' statement applies to allegations of loss causation."); *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) ("So long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate."). At times, we have applied both Rule 8(a) and 9(b) standards to allegations of loss causation, finding that plaintiffs meet both standards. *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989–90 (9th Cir. 2008).

Some of our sister circuits have suggested that heightened pleading standards apply to loss causation. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("We review allegations of loss causation for 'sufficient specificity,' a standard largely consonant with Fed. R. Civ. P. 9(b)'s requirement that averments of fraud be pled with particularity."); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 842 (7th Cir. 2007) ("To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries."). The Second Circuit applies a different, but heightened, two-part test for loss causation, requiring that plaintiffs show that the loss was both foreseeable and caused by the materialization of the risk concealed by the fraudulent statement. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 107 (2d Cir. 2007). At least one district court in the Sixth Circuit has suggested that heightened pleading requirements apply to loss causation. *See Fla. Carpenters*

*Reg'l Council Pension Plan v. Eaton Corp.*, 964 F. Supp. 2d 875, 891 (N.D. Ohio 2013). The First Circuit, like our court, has only stated that it is unclear whether a plaintiff has to plead loss causation under Rule 8(a) or 9(b). *See Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 239 n.6 (1st Cir. 2013).

Other circuits have suggested that heightened pleading standards do not apply to loss causation. The Fifth Circuit has concluded that Rule 8(a) applies. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009). At least one court in the Third Circuit agrees with this approach. *See Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 558 (D.N.J. 2010).

We are persuaded by the approach adopted in the Fourth Circuit and hold today that Rule 9(b) applies to all elements of a securities fraud action, including loss causation. This approach is appropriate for at least three reasons.

First, the law on securities fraud is derived from common-law fraud. As the Supreme Court has noted, "the case law developed in this Court with respect to § 10(b) and Rule 10b-5 has been based on doctrines with which we, as judges, are familiar: common-law doctrines of fraud and deceit." *Basic Inc. v. Levinson*, 485 U.S. 224, 253 (1988). The requirement of loss causation, in particular, is founded on the common law of fraud and deceit. *Dura*, 544 U.S. at 343–44 ("the common law has long insisted that a plaintiff in [a fraud or deceit] case show not only that had he known the truth he would not have acted but also that he suffered actual economic loss."). Since Rule 9(b) applies to all circumstances of common-law fraud, *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 1322

(2014), and since securities fraud is derived from common law fraud, it makes sense to apply the same pleading standard to all circumstances of securities fraud.

Second, Rule 9(b) clearly states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Securities fraud encompasses six elements, including loss causation. *Dura*, 544 U.S. at 341–42. Loss causation is part of the "circumstances" constituting fraud because, without it, a claim of securities fraud does not exist.

Third, our approach creates a consistent standard through which to assess pleadings in 10(b) actions, rather than the piecemeal standard adopted by some courts.

Accordingly, we hold that Rule 9(b) governs the Plaintiffs' Amended Complaint. However, the Plaintiffs' claims fail even if the less stringent Rule 8(a) standard applied.

## II. Counts I, III, and IV

We first address Counts I, III, and IV of the Amended Complaint.[1] The Plaintiffs allege that the Defendants made false and misleading statements concerning Apollo's enrollment, revenue growth, business model, and recruitment

---

[1] The Plaintiffs' allegations in Counts I, III, and IV of the Amended Complaint allege similar legal theories and cover the same factual matter. This Opinion treats the allegations together. For example, the Plaintiffs' business ethics claim, Count IV, alleges misstatements concerning Apollo's "student recruitment practice" and its organizational values. Count I also contains allegations related to Apollo's business and recruitment model.

of students. The Plaintiffs allege that Apollo grew largely as a result of unethical recruitment of unqualified students, in contrast to Apollo's disclosures and public filings, and did not disclose their unsavory practices to investors.

## A. Material Misstatement

The Plaintiffs fail to state a claim because the material misrepresentations the Plaintiffs allege are not objectively false statements. We distinguish "puffing" from misrepresentation. "Puffing" concerns expressions of opinion, as opposed to knowingly false statements of fact: "When valuing corporations,[] investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers. This mildly optimistic, subjective assessment hardly amounts to a securities violation." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010). Statements by a company that are capable of objective verification are not "puffery" and can constitute material misrepresentations. *See SEC v. Todd*, 642 F.3d 1207, 1216–17 (9th Cir. 2011) (finding that a defendant's accounting calculation of the financial impact of a transaction was objective and a material misrepresentation).

The statements the Plaintiffs allege Apollo made are inherently subjective "puffing" and would not induce the reliance of a reasonable investor. The Plaintiffs' Amended Complaint cites several alleged statements made by Apollo, but we analyze a few illustrative examples here. In each of its Form 10-K filings between 2006 and 2008, Apollo stated that "[*w*]*e believe* that our track record for enrollment and revenue growth is attributable to our offering comprehensive services combining quality educational content, teaching resources and customer service with formats that are accessible and

easy to use for students as well as our corporate clients. ” In several of its 10-K and 10-Q filings between 2006 and 2008, Apollo described enrollment and revenue growth as "significant events." These statements are vague and do not set out with specificity the reasons for its enrollment and revenue growth. We concluded that the statement "all the advantages only the nation's largest wireless company can provide" was vague and provided nothing concrete upon which a plaintiff could reasonably rely. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042–43 (9th Cir. 2010). Much like the defendant in *New Cingular*, who only used the general term "advantages" in its description, Apollo's use of general terms like "educational content" and "teaching resources" "provided nothing concrete upon which [the Plaintiffs] could rely." *Id.* at 1043. *See also Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (affirming dismissal of fraud claim that was based on defendants' alleged promise that development was a "high priority").

The cases cited by the Plaintiffs are inapposite because they consider statements that can be true or false on an objective standard, rather than business puffery or opinion. In *SEC v. Todd*, we considered an objective misstatement, where a defendant publicly reported an incorrect amount for the accounting impact of a transaction. 642 F.3d at 1217–18. In *Freudenberg v. E\*Trade Financial Corporation*, the Southern District of New York considered financial statements that clearly understated net income and loss reserves as well as the quality of mortgage loans. 712 F. Supp. 2d 171, 178, 182 (S.D.N.Y. 2010). *In re Van der Moolen Holding N.V. Securities Litigation* dealt with a company that did not disclose that its revenue had been generated by unlawful trading practices, even though it had knowledge that its

employees were violating rules of the New York Stock Exchange. 405 F. Supp. 2d 388, 400–401 (S.D.N.Y. 2005). Unlike accounting calculations or ignorance of rule violations, the statements by Apollo were subjective and preceded by qualifiers, such as "We believe."

## B.  Omission

According to the Plaintiffs, Apollo failed to disclose to investors that it recruited flawed students, who were ultimately unable to pay tuition. Apollo also allegedly hid the fact that it had created an incentive system for recruiters that made misconduct inevitable because the recruiters were focused on getting as many students as possible.

The Plaintiffs' omissions theory fails to state a claim because the Defendants clearly disclosed material information to investors. *See Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009) ("As for omissions, the term generally refers to the failure to disclose material information about a company, as opposed to affirmative manipulation."). Investors knew that they were investing in Apollo and its University of Phoenix program, an institution whose business model relied on recruiting students for profit. Public filings, readily available to Apollo's investors, revealed that Apollo was spending money every year on marketing, which was used to advertise to and recruit students for the University of Phoenix. Apollo's public filings made clear that it targeted individuals unable to attend traditional colleges and universities. Apollo also disclosed its enrollment numbers and withdrawal rates.

**C. Scienter**

We can affirm the dismissal of Plaintiffs' claims in Count I, III, and IV of the Amended Complaint based solely on the Plaintiffs' failure to allege specific facts to show a material misstatement or omission. Even if the Plaintiffs had adequately alleged a claim on misstatement or omission grounds, however, they did not adequately plead scienter. This is an independent basis on which to affirm the district court's decision.

A defendant who makes misrepresentations or omissions "either intentionally or with deliberate recklessness" acts with scienter. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005).

> Under *Tellabs* and Ninth Circuit law, we conduct a two-part inquiry to determine whether scienter has been adequately pled: first, we determine whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegation is sufficient, we conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness.

*N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011) (internal citations omitted).

Where, as here, the Plaintiffs seek to hold individuals and a company liable on a securities fraud theory, we require that

the Plaintiffs allege scienter with respect to each of the individual defendants. *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743–44 (9th Cir. 2008). We may, however, impute scienter to individual defendants in some situations, for example, where we find that "a company's public statements [are] so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication." *Id*. at 744.

Employing a holistic review, we conclude that the Plaintiffs do not allege sufficient facts to establish a claim that the Defendants either did not know or were consciously reckless of their deceptive recruitment practices. The Plaintiffs rely on statements by various anonymous employees and executives who suggest that they personally witnessed faulty recruiting or attended meetings where Apollo representatives discussed marketing to unfit students. The Plaintiffs do not provide specificity about these meetings and do not discuss what made students unfit. Instead, the Plaintiffs rely on generalizations about groups of people, such as the homeless or veterans, who were supposedly unreliable students. At best, the Plaintiffs' allegations reveal isolated instances of faulty recruitment, rather than widespread deception, which would be necessary to establish fraudulent intent or reckless ignorance based on a holistic analysis. *See N.M. State*, 641 F.3d at 1095. The Plaintiffs' statements also do not sufficiently allege the individual Defendants acted with scienter.

### D.  Loss Causation

"To prove loss causation, [the Plaintiffs] must demonstrate a causal connection between the deceptive acts

that form the basis for the claim of securities fraud and the injury suffered by the [Plaintiffs]." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1027 (9th Cir. 1999).

The Plaintiffs' Amended Complaint fails, whether we apply Rule 8(a) or Rule 9(b). The Plaintiffs do not allege specific statements made by the Defendants that were made untrue or called into question by subsequent public disclosures. Although the Plaintiffs point to several public disclosures, we analyze a few illustrative examples below. On January 7, 2010, Apollo disclosed in a press release that a review by the Department of Education had "expressed a concern that some students enroll and begin attending classes before completely understanding the implications of enrollment, including their eligibility for student financial aid." It is unclear what claims made by the Defendants were invalidated by this statement. An expression of concern, moreover, does not constitute a corrective disclosure and a public admission of Apollo's alleged fraud. In similar circumstances, we recently held that a company's announcement of an internal investigation, by itself, does not "reveal fraudulent practices to the market" and therefore is insufficient to establish loss causation. *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014).

Similarly, the Plaintiffs claim that, in the beginning of August 2010, the Government Accountability Office issued a report that discussed for-profit education and conduct by Apollo schools. The GAO report purportedly "revealed a systemic practice of manipulative and deceptive recruitment practices within Apollo's industry." This report focused on the for-profit education industry as a whole, rather than Apollo and the University of Phoenix. The Plaintiffs do not specify which of the Defendants' statements were made

untrue by the GAO report. As a result, the Plaintiffs have not adequately alleged that there was a causal connection between the public information contained in the GAO Report and subsequent market activity.

While their appeal was pending, the Plaintiffs submitted a First Circuit case, *Massachusetts Retirement System v. CVS Caremark Corporation*, as supplementary authority for their loss causation claim. 716 F.3d 229 (1st Cir. 2013). In *CVS Caremark*, investors on a conference call with a high-level CVS executive asked him about the integration of CVS and Caremark after a merger. The executive disclosed that the company had lost a major contract as a result of "service issues" and that the company was facing challenges after the merger. *Id*. at 235. The First Circuit concluded that the disclosure by the executive was sufficient to establish loss causation, especially where analysts had already expressed concerns about CVS' ability to integrate Caremark. Unlike the present case, *CVS Caremark* involved a specific statement made by a high-level executive about the exact fact that had been misrepresented in the past, the successful integration of the two companies. *CVS Caremark* does not help the Plaintiffs plead a loss causation claim.

## III.    Count II

In Count II of the Amended Complaint, the Plaintiffs allege the Defendants made misstatements and omissions about Apollo's financial condition and overstated tuition revenues and receivables attributable to students. The Plaintiffs allege that, by publicly counting tuition expected from Title IV students as part of its revenue, Apollo made fraudulent misstatements and omissions in violation of Section 10(b) and Rule 10b-5.

Because the Plaintiffs' allegations do not plausibly establish a misstatement or omission, we hold that the district court correctly dismissed Count II of the Amended Complaint. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157–58 (2008). The Plaintiffs' allegations in Count II also do not establish scienter and loss causation, which are  independent bases on which to dismiss the Plaintiffs' claims. We do not address those requirements here because the factual analysis is similar to that contained in Part II of this opinion.

## A.  Misstatement and Omission

The Plaintiffs do not allege a misstatement related to Apollo's accounting of Title IV funds. Businesses have some discretion in making  accounting estimates. "Generally accepted accounting principles [] tolerate a range of reasonable treatments, leaving the choice among alternatives to management." *Thor Power Tool Co. v. C. I. R.*, 439 U.S. 522, 544 (1979) (internal quotation marks omitted). "The case law indicates, therefore, that although overstatement of revenues in violation of GAAP may support a plaintiff's claim of fraud, the plaintiff must show with particularity how the adjustments affected the company's financial statements and whether they were material in light of the company's overall financial position." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1018 (9th Cir. 2005).

On the one hand, the Plaintiffs do show that many of Apollo's students were funded by Title IV of the Higher Education Act and that, when students left the University, Apollo was required by law to return to the federal government Title IV funds. However, Apollo retained discretion to set its refund policy and made no fraudulent

representations regarding its accounting. *See* United States Department of Education and Federal Student Aid Handbook, Vol. 5, at 5–3 (2012) ("The Return of Title IV Funds (Return) regulations do not dictate an institutional refund policy."). Although students may not have been able to pay the remainder of their tuition out-of-pocket, under the federal guidelines in place at the time, Apollo could charge for the remaining tuition owed by the student. *Id*. Apollo, in turn, could use the expected tuition revenue from withdrawn students as part of its accounting. Apollo did not make a misrepresentation by including this revenue in its public filings.

The Plaintiffs' allegations also do not establish an omission theory. Apollo disclosed to its investors the difficulty of collecting tuition from withdrawn students. In 2006, Apollo publicly stated that "[m]anagement is committed to remediating the control deficiencies that constitute the material weaknesses described herein by implementing changes to our internal control over financial reporting." Apollo's financial statements for the Class Period included increasing amounts of bad debt reserves to take into account the challenges of collecting revenue from withdrawn students. Apollo disclosed that increases in its bad debt expense were partially attributable to uncollectible student tuition. The Plaintiffs' Amended Complaint admits that "Apollo eventually recorded allowances for doubtful accounts with respect to its receivables from withdrawn students." Accordingly, the Plaintiffs do not adequately allege the specific errors made by the Defendants in accounting, and therefore, the district court correctly dismissed this claim.

## IV.    Counts V and VII

The Plaintiffs also argue that certain individual Defendants sold Apollo stock while in possession of material, non-public information in violation of sections 10(b) and 20A of the Securities and Exchange Act and SEC Rule 10b-5.

The alleged material, non-public information is the same information at issue in the Exchange Act claims, namely that Apollo's public filings contained statements that were false and misleading. We hold that the Plaintiffs have not adequately alleged that the Defendants made misstatements or omissions. Therefore, the Plaintiffs have not adequately alleged that the Defendants were in possession of material, non-public information.

## V.  Count VI

Count VI of the Amended Complaint alleges that certain individual Defendants violated section 20(a) of the Exchange Act because they were controlling persons who had direct and supervisory involvement in day-to-day operations of Apollo. As controlling persons, the individual Defendants would be jointly and severally liable for the institution's violations of the Securities and Exchange Act.

We hold that the Plaintiffs cannot establish control person liability because they have not adequately alleged violations of section 10(b) and Rule 10b-5.

## VI.    Conclusion

The district court properly dismissed the Plaintiffs' Amended Complaint for failure to state a claim. The

Plaintiffs do not state enough specific facts to plausibly allege that the Defendants violated Securities and Exchange Act 10(b) and SEC Rule 10b-5. We affirm the decision of the district court. All outstanding motions filed by Plaintiffs-Appellants and Defendants-Appellees are denied. Each party shall bear its own costs on appeal.

**AFFIRMED.**