**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MINEWORKERS' PENSION SCHEME; BRITISH COAL STAFF SUPERANNUATION SCHEME, *Plaintiffs-Appellees*, | No. 15-17282 |
| | D.C. No. 2:12-cv-00555-DGC |
| v. | |
| FIRST SOLAR INCORPORATED; MICHAEL J. AHEARN; ROBERT J. GILLETTE; MARK R. WIDMAR; JENS MEYERHOFF; JAMES ZHU; BRUCE SOHN; DAVID EAGLESHAM, *Defendants-Appellants*. | OPINION |

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted October 18, 2017
San Francisco, California

Filed January 31, 2018

Before: Sidney R. Thomas, Chief Judge, and J. Clifford
Wallace and Consuelo M. Callahan, Circuit Judges.

Per Curiam Opinion

# SUMMARY[*]

## Securities Fraud

The panel affirmed the district court's denial in part of defendants' motion for summary judgment in an action under the Securities Exchange Act of 1934.

The panel held that a general proximate cause test is the correct test for loss causation under the Act, and there is no requirement that the defendant's fraud have been revealed to the market.

## COUNSEL

Jordan Eth (argued), Paul Flum, Judson E. Lobdell, and James R. Sigel, Morrison & Foerster LLP, San Francisco, California; Joseph N. Roth, Osborn Maledon P.A., Phoenix, Arizona; for Defendants-Appellants.

Luke O. Brooks (argued), Jason A. Forge, Daniel S. Drosman, and Michael J. Dowd, Robbins Geller Rudman & Dowd LLP, San Diego, California; Matthew S. Melamed, Andrew S. Love, and Susan K. Alexander, Robbins Geller Rudman & Dowd LLP, San Francisco, California; for Plaintiffs-Appellees.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

PER CURIAM:

We consider the question certified by the district court for interlocutory appeal under 28 U.S.C. § 1292(b)[1] as to the correct test for loss causation under the Securities Exchange Act of 1934. We conclude that a general proximate cause test—the test ultimately applied by the district court—is the proper test.

I

First Solar, Inc., is one of the world's largest producers of photovoltaic solar panel modules. The Plaintiffs represent purchasers of First Solar, Inc.'s publicly traded securities between April 30, 2008 and February 28, 2012 ("the Class Period"). Plaintiffs allege that, during the Class Period, First Solar discovered a manufacturing defect causing field power loss and a design defect causing faster power loss in hot climates. Plaintiffs allege that First Solar wrongfully concealed these defects, misrepresented the cost and scope of

---

[1] "A non-final order may be certified for interlocutory appeal where it 'involves a controlling question of law as to which there is substantial ground for difference of opinion' and where 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 687–88 (9th Cir.2011) (quoting 28 U.S.C. § 1292(b)). "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution . . . ." *Id.* at 688. Given these standards and the posture of the case, we are satisfied that the district court and the motions panel of this court properly determined that certification was appropriate in this case.

the defects, and reported false information on their financial statements.

During the Class Period, First Solar's stock fell from nearly $300 per share to nearly $50 per share.  The individually named Defendants, who are First Solar officers and executives, purchased or sold First Solar stock during the Class Period.  Steep declines in First Solar's stock, beginning on July 29, 2010, followed the release of quarterly financial disclosures reporting the defects and associated costs, the departure of First Solar's CEO, and disappointing financial results.

Plaintiffs sued First Solar and its officers, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5.  They allege that Defendants engaged in several acts of fraud, including wrongfully concealing product defects, misrepresenting the cost and scope of the defects, and reporting false information on financial statements.  Plaintiffs allege that when First Solar later disclosed product defects and attendant financial liabilities to the market, First Solar's stock price fell, resulting in Plaintiffs' economic loss.

Defendants filed a motion for summary judgment on all claims.  The district court granted Defendants' motion in part and denied in larger part, holding that Plaintiffs advanced triable issues of material fact on several claims.  However, the district court stayed the action because it perceived two competing lines of case law in the Ninth Circuit regarding loss causation.

According to the district court, one line of cases represents the rule that "drawing a causal connection between

the *facts* misrepresented and the plaintiff's loss will satisfy loss causation." These cases are *Nuveen Municipal High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111 (9th Cir. 2013); *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008); and *In re Daou Systems Inc.*, 411 F.3d 1006 (9th Cir. 2005). The court interpreted a second group of cases to adopt a "more restrictive view," in which "[s]ecurities fraud plaintiffs can recover only if the market learns of the defendants' fraudulent practices. It is not enough that plaintiffs are injured by the consequences of those practices." These cases are *Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, 774 F.3d 598 (9th Cir. 2014); *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376 (9th Cir. 2010); and *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008).

After considering circuit law, the district court applied the following loss causation test: "A plaintiff can satisfy loss causation by showing that the defendant misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss." *Nuveen*, 730 F.3d at 1120 (internal quotation marks omitted). The court certified the following question for interlocutory appeal under 28 U.S.C. § 1292(b):

> [W]hat is the correct test for loss causation in the Ninth Circuit? Can a plaintiff prove loss causation by showing that the very facts misrepresented or omitted by the defendant were a substantial factor in causing the plaintiff's economic loss, even if the fraud itself was not revealed to the market (*Nuveen*, 730 F.3d at 1120), or must the market actually

learn that the defendant engaged in fraud and react to the fraud itself (*Oracle*, 627 F.3d at 392)?

## II

The Securities Exchange Act of 1934, codified at 15 U.S.C. § 78a *et seq.*, imposes statutory requirements on a judicially-implied private damages action rooted in common law tort actions for deceit and misrepresentation. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). The Act defines "loss causation" as the plaintiff's "burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). This inquiry requires no more than the familiar test for proximate cause. *Dura*, 544 U.S. at 346; *accord Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016); *Loos*, 762 F.3d at 887; *Oracle*, 627 F.3d at 394; *Daou*, 411 F.3d at 1025. To prove loss causation, plaintiffs need only show a "causal connection" between the fraud and the loss, *Nuveen*, 730 F.3d at 1119; *Daou*, 441 F.3d at 1025, by tracing the loss back to "the very facts about which the defendant lied," *Nuveen*, 730 F.3d at 1120. "Disclosure of the fraud is not a sine qua non of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss." *Id.*

Our most recent decision on loss causation, *Lloyd*, was published after the district court's order and clarifies the applicable rule. In *Lloyd*, the plaintiffs pleaded loss causation by alleging that defendant CVB's fraudulent conduct led to a subpoena, and that when the market learned of the subpoena, the stock price dropped as a market reaction.

811 F.3d at 1210–11.  We explained that "loss causation is a 'context-dependent' inquiry as there are an 'infinite variety' of ways for a tort to cause a loss." *Id.* at 1210 (citing *Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536 (1983)) (internal citation omitted).  "Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss."  *Id.* (citing *Dura*, 544 U.S. at 343–46) (internal citation omitted).  In *Lloyd*, though the plaintiffs pleaded that the market understood the subpoena to be a revelation of fraud, *id.* at 1210–11, we did not suggest that this path is the only way to satisfy loss causation. Indeed, we affirmed the opposite: the plaintiffs simply "adequately pleaded 'a causal connection between the material misrepresentation and the loss.'"  *Id.* at 1211 (quoting *Dura*, 544 U.S. at 342).

The cases that the district court cites for the proposition of a more restrictive test should be understood as fact-specific variants of the basic proximate cause test, as clarified by *Lloyd*.  Revelation of fraud in the marketplace is simply one of the "infinite variety" of causation theories a plaintiff might allege to satisfy proximate cause.  *Id.* at 1210.  When plaintiffs plead a causation theory based on market revelation of the fraud, this court naturally evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory. *E.g.*, *Metzler*, 540 F.3d at 1059, 1063 (holding that plaintiffs failed to plead loss causation where plaintiffs' theory was that "Corinthian's fraud was revealed to the market, causing Metzler's losses" but "[t]he TAC does not allege that the June 24 and August 2 announcements disclosed—or even suggested—[the fraudulent activities] to the market").  But our approval of one theory should not imply our rejection of

others.  A plaintiff may also prove loss causation by showing that the stock price fell upon the revelation of an earnings miss, even if the market was unaware at the time that fraud had concealed the miss.  *See Berson*, 527 F.3d at 989–90; *Daou*, 411 F.3d at 1026.  That a stock price drop comes immediately *after* the revelation of fraud can help to rule out alternative causes.  *See Dura*, 544 U.S. at 342–43.  But that sequence is not a condition of loss causation.  *Nuveen*, 730 F.3d at 1120.

This rule makes sense because it is the underlying facts concealed by fraud that affect the stock price.  *See* Jay W. Eisenhofer et al., *Securities Fraud, Stock Price Valuation, and Loss Causation*, 59 BUS. LAW. 1419, 1444 (2004).  Fraud simply causes a delay in the revelation of those facts.  The "ultimate issue" under either theory "is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss."  *Lloyd*, 811 F.3d at 1210.

## III

The district court held that the evidence, if accepted by the jury, could satisfy the proximate cause loss causation test with respect to five of the six alleged stock price declines. We conclude that the district court applied the correct test in making that determination.  We need not, and do not, reach any other issue presented by this case.

**AFFIRMED.**