**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID GRIGSBY; JOSEPH SHEPARD,
On Behalf of Themselves and All
Others Similarly Situated,
*Plaintiffs-Appellants*,

and

BAR MANDALEVY; DAVID SIEBERT,
*Plaintiffs*,

v.

BOFI HOLDING, INC.; GREGORY
GARRABRANTS; ANDREW J.
MICHELETTI; ESHEL BAR-ADON;
PAUL J. GRINBERG,
*Defendants-Appellees*,

v.

BOFI INVESTORS GROUP; VICKIE
SIEBERT; CHAO WANG; LARRY L.
DOOLEY; LINDA OSTERMANN; PHILIP
RICCIARDI,
*Movants.*

No. 19-55042

D.C. No.
3:17-cv-00667-
GPC-KSC

OPINION

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted May 7, 2020
Pasadena, California

Filed November 3, 2020

Before: Mary H. Murguia and Morgan Christen, Circuit
Judges, and Alvin K. Hellerstein,[*] District Judge.

Opinion by Judge Christen

**SUMMARY[**]**

**Securities Fraud**

The panel affirmed in part and reversed in part the district
court's order dismissing, for failure adequately to plead loss
causation, a securities fraud action alleging that defendant
BofI Holding, Inc., and its senior executives violated §§ 10(b)
and 20(a) of the Securities Exchange Act.

---

[*] The Honorable Alvin K. Hellerstein, United States District Judge for
the Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Plaintiffs alleged that defendants denied that BofI was the subject of a money laundering investigation and falsely stated that a whistleblower's separate allegations that BofI made undisclosed loans to criminals were "disconnected from the reality of BofI's highly compliant and top-performing business." To establish a causal connection between BofI's two statements and declines in BofI's stock price, plaintiffs pointed to two articles that allegedly revealed the falsity of BofI's statements immediately prior to drops in BofI's stock price. One of the articles relied on information obtained through a Freedom of Information Act request to the Securities and Exchange Commission; the other appeared on a website called *Seeking Alpha*. The district court determined that the article premised on information from a FOIA request did not reveal new information to the market, and thus could not be a corrective disclosure of any misrepresentation.

The panel held that plaintiffs can satisfy the loss-causation pleading burden by alleging that a corrective disclosure revealed the truth of a defendant's misrepresentation to the market and thereby caused the company's stock price to drop and investors to lose money. The panel held that plaintiffs may rely on a corrective disclosure derived from a FOIA response by plausibly alleging that the FOIA information had not been previously disclosed. The panel therefore reversed the district court's loss causation ruling to the extent it deemed information obtained via a FOIA request to be publicly available prior to its disclosure.

Affirming in part, the panel concluded that the district court correctly ruled that the *Seeking Alpha* article did not constitute a corrective disclosure, in part because it was written by an anonymous short-seller with no expertise

beyond that of a typical market participant who based the article solely on information found in public sources.

The panel remanded the case to the district court.

## COUNSEL

Jeremy A. Lieberman (argued), Emma Gilmore, Branda F. Szydlo, and Jennifer Banner Sobers, Pomerantz LLP, New York, New York; Patrick M. Dahlstrom, Pomerantz LLP, Chicago, Illinois; Adam M. Apton and Adam McCall, Levi & Korinsky LLP, Washington, D.C.; for Plaintiffs-Appellants.

John P. Stigi III (argued), Sheppard Mullin Richter & Hampton LLP, Los Angeles, California; Polly Towill, Sheppard Mullin Richter & Hampton LLP, Los Angeles, California; for Defendants-Appellees.

## OPINION

CHRISTEN, Circuit Judge:

In this securities fraud appeal, we consider whether information obtained through the Freedom of Information Act (FOIA) can constitute a corrective disclosure for purposes of alleging loss causation. Plaintiffs, who represent a putative shareholder class, filed a complaint alleging that Defendant BofI Holding, Inc. (BofI) and its senior executives violated §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b)–78t(a), by denying that BofI was the subject of a money laundering investigation. The complaint

also alleged that BofI falsely stated that a whistleblower's separate allegations that BofI made undisclosed loans to criminals were "disconnected from the reality of BofI's highly compliant and top-performing business."

To establish a causal connection between BofI's two statements and declines in BofI's stock price, plaintiffs pointed to two articles that allegedly revealed the falsity of BofI's statements immediately prior to drops in BofI's stock price. One of the articles relied on information obtained through a FOIA request to the Securities and Exchange Commission (SEC); the other appeared on a website called *Seeking Alpha*.

The district court concluded that plaintiffs adequately alleged the falsity of defendants' statements, but failed to adequately allege loss causation. The court determined that the article premised on information obtained from a FOIA request did not reveal new information to the market, and thus could not be a corrective disclosure of any misrepresentation. In reaching this conclusion, the court decided as a matter of law that the information obtained pursuant to the FOIA request was publicly available prior to its disclosure. The court ruled that the *Seeking Alpha* article also failed to disclose information that had not already been made public. The court dismissed plaintiffs' complaint.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse in part and remand. Plaintiffs may rely on a corrective disclosure derived from a FOIA response by plausibly alleging that the FOIA information had not been previously disclosed. If a plaintiff relies on information obtained via a FOIA request, the pleading burden to allege loss causation is no different from the pleading burden for

other types of corrective disclosures. We therefore reverse the district court's loss causation ruling to the extent it deemed information obtained via a FOIA request to be publicly available prior to its disclosure. We conclude the district court correctly ruled that this particular *Seeking Alpha* article did not constitute a corrective disclosure, in part because it was written by an anonymous short-seller with no expertise beyond that of a typical market participant who based the article solely on information found in public sources.

**i.**

BofI is a nationwide bank that provides various financial products and services.[1] The SEC opened an informal inquiry into BofI in May 2015 and began a formal investigation in February 2016, for which it issued two subpoenas to BofI. The first subpoena requested information about BofI's related party transactions, potential conflicts of interests, and loans to two financial entities. The second subpoena requested information related to "single-family residential loans extended to non-resident aliens." BofI never disclosed the existence of either subpoena.

In March 2017, the *New York Post* reported that the Department of Justice, with involvement from the SEC, was investigating BofI for possible money laundering. The same day, BofI issued a press release stating that it had "received no indication of, and ha[d] no knowledge regarding, such purported money laundering investigation." But on October 25, 2017, the *Post* published an article titled "Bank of Internet

---

[1] BofI, or "Bank of Internet," changed its name to Axos in 2018, but it was still known as BofI at all relevant times in this lawsuit.

was under 16-month SEC investigation." Plaintiffs contend this article revealed that BofI's earlier denial of any knowledge of an SEC investigation was false. The October 25, 2017 *Post* article was based on a report by a subscription research service called *Probes Reporter* that obtained information about the SEC investigation through a FOIA request.[2] The day after the *Post* article was published, BofI's stock price declined by 4.57%.

## ii

Plaintiffs filed an amended complaint on February 20, 2018. It alleged that BofI and several of its executives violated § 10(b) and § 20(a) of the Securities and Exchange Act. Defendants filed a motion to dismiss, which the district court granted, but the court allowed plaintiffs leave to amend. Concerning the money laundering allegation, the court agreed with plaintiffs that BofI's statement that it had "no indication of . . . [a] money laundering investigation" represented a material misrepresentation, but the court concluded that plaintiffs had insufficiently alleged loss causation, another § 10(b) pleading requirement, because they had not sufficiently alleged that the October 25, 2017 *Post* article revealed nonpublic information to the market. The court reasoned that because the article relied on "information available from a federal agency through FOIA," the article only disclosed information that was already publicly available. The court assumed that "information-hungry market participants" must have sought the same information through the FOIA process prior to the article's publication.

---

[2] The *Probes Reporter* report containing the FOIA information became widely available to non-subscribers on the same day the *Post* published its article regarding the SEC's 16-month investigation.

In the court's view, "[w]hat matters is whether other investors, seeking information about BofI, would reasonably have been able to obtain [the FOIA] information."

Plaintiffs' second amended complaint asserted that the FOIA information reported in the *Post* article had not been previously disclosed to the public. The second amended complaint included new allegations that the SEC received only five other BofI-related FOIA requests during the relevant time period that were granted in full or in part, that there can be "significant delays" in the agency's response to FOIA requests, and that the agency "often refuses to provide information regarding investigations in response to FOIA requests."

BofI moved to dismiss the second amended complaint, and this time the district court granted the motion with prejudice. The court again concluded that plaintiffs failed to plead loss causation adequately and reiterated its prior ruling that "information about a company that is available from its federal regulator through the FOIA is publicly available to an information-hungry market." *Mandalevy v. Bofi Holding, Inc.*, No. 17CV667-GPC-KSC, 2018 WL 6436723, at \*9 (S.D. Cal. Dec. 7, 2018) (internal quotation marks omitted). The court determined the new allegations regarding other BofI-related FOIA requests were too speculative or generalized to plausibly allege that the FOIA-derived information in the October 25, 2017 *Post* article had not already been obtained by market participants. *Id.* at \*9–10. Similarly, the court concluded that the *Seeking Alpha* article failed to disclose new information to the market, and

therefore did not qualify as a corrective disclosure.[3] Plaintiffs timely appealed.

### iii.

We review *de novo* a district court's order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Loos v. Immersion Corp.*, 762 F.3d 880, 886 (9th Cir. 2014).

### iv.

To state a securities fraud claim under § 10(b) of the Securities Exchange Act of 1934, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Erica P. John Fund, Inc. v. Halliburton Co.* (*Halliburton I*), 563 U.S. 804, 810 (2011) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011)). The disputed element in this appeal is loss causation.

"Loss causation is shorthand for the requirement that 'investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss.'" *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (quoting *Halliburton I*, 563 U.S. at 807); *see also* 15 U.S.C. § 78u-4(b)(4). We apply a proximate cause test in which "the ultimate issue is whether the defendant's misstatement, as

---

[3] Plaintiffs alleged several other material misstatements, but only these two misstatements are on appeal.

opposed to some other fact, foreseeably caused the plaintiff's loss." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (quoting *Lloyd*, 811 F.3d at 1210). At the pleading stage, a plaintiff need only allege that the "revelation of fraudulent activity," rather than changing market conditions or other unrelated factors, proximately caused the decline in defendant's stock price. *Loos*, 762 F.3d at 887.

A plaintiff can satisfy the loss-causation pleading burden by alleging that a "corrective disclosure" revealed the truth of a defendant's misrepresentation and thereby "caused the company's stock price to drop and investors to lose money." *Lloyd*, 811 F.3d at 1209 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 573 U.S. 258, 264 (2014)). To adequately plead a corrective disclosure, a plaintiff must "plausibly allege that the defendant's fraud was '*revealed* to the market and *caused* the resulting losses.'" *Loos*, 762 F.3d at 887 (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008)).

In general, a disclosure is not "corrective" if it contains information "derived 'entirely from public filings and other publicly available sources' of which the stock market was presumed to be aware." *Loos*, 762 F.3d at 889 (quoting *Meyer v. Greene*, 710 F.3d 1189, 1198 (11th Cir. 2013)). Because publicly available information in an efficient market is generally reflected in the price of a security, the disclosure of confirmatory information—or information already known by the market—will not cause a change in stock price. *See Meyer*, 710 F.3d at 1197; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988).

This appeal requires us to consider the discrete question whether information obtained through a FOIA request can be "corrective" of an allegedly false and misleading statement by revealing nonpublic information to the market. Defendants contend that "because market actors could access the [FOIA] information . . . BofI's stock price already reflected it" when the *Post* published its article. In other words, defendants treat information that might have been discoverable through a FOIA request as information that was already public.

There are two flaws with defendants' approach. First, information must be requested before it can be received through the FOIA. *See* 5 U.S.C. § 552(a)(3) (establishing that the public may request agency records that are not proactively disclosed pursuant to § 552(a)(1)–(2)). FOIA "'facilitate[s] public access to [g]overnment documents' by 'establish[ing] a judicially enforceable right to secure [government] information from possibly unwilling official hands.'" *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015) (alterations in original) (quoting *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009)). Information acquired through the FOIA does not simply reside on a shelf somewhere, ready for the taking.

Second, information must be produced before it is publicly available, and not all FOIA requests yield disclosure of the sought-after information. Despite FOIA's "strong presumption in favor of disclosure," an agency may "withhold[] . . . requested documents" under certain circumstances. *Civ. Beat Law Ctr. for the Pub. Int., Inc. v. Ctrs. for Disease Control & Prevention*, 929 F.3d 1079, 1084 (9th Cir. 2019) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). The FOIA statute contains nine

exemptions that may bar public disclosure of information, 5 U.S.C. § 552(b); *see also Hamdan*, 797 F.3d at 770. If exemptions are invoked, the process for appealing their applicability adds delay even if the information is ultimately disclosed. *See* § 552(a)(6)(A)(i); 17 C.F.R. § 200.80(d)–(f).

Given FOIA's general framework, the fact that a market actor lodges a FOIA request on a given date does not allow the conclusion that the information became publicly available on that date because FOIA requests do not always result in disclosures—and even when they do, the disclosures are not instantaneous. At a minimum, there must be some indication that the relevant information was requested and produced before the information contained in a FOIA response can be considered publicly available for purposes of loss causation. For these reasons, the district court erred by concluding as a matter of law that an article containing information obtained through the FOIA could not qualify as a corrective disclosure for purposes of establishing loss causation.

**v.**

A separate but related question is whether information contained in the FOIA response provided to the *Post*—i.e., the fact that BofI was the subject of an SEC investigation—had been publicly disclosed prior to the October 25, 2017 *Post* article.

Plaintiffs' burden is to plausibly allege that "the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity," rather than other factors. *Loos*, 762 F.3d at 887. In addition, plaintiffs must satisfy the particularity standard of Rule 9(b). This heightened pleading standard applies to all elements of a securities fraud claim,

including loss causation, *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014), but it does not require that the causation inference be *more* than "plausible." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) ("So long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate."); *see also Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1271 (9th Cir. 2017) (noting that Rule 8(a)'s plausibility standard and Rule 9(b)'s particularity requirement are distinct); *Cafasso United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (same). Plaintiffs' burden is to describe how the falsity of the defendant's misstatement was revealed to the market, not to describe all the ways in which it was *not* revealed.

Here, by effectively requiring plaintiffs to show that no one else had obtained the same information through the FOIA before the October 25, 2017 *Post* article, the court elevated plaintiffs' pleading burden. The operative complaint alleged that the *Post* article disclosed BofI had been the subject of a formal SEC investigation, that the article revealed the falsity of BofI's prior statement, and that the revelation caused BofI's stock price to drop. This was sufficient; plaintiffs relying on corrective disclosures that are in turn based on information obtained through the FOIA do not face a special pleading burden for purposes of alleging § 10(b) loss causation. *See Lloyd*, 811 F.3d at 1210–11; *Gilead*, 536 F.3d at 1057–58.

Because the district court dismissed the first amended complaint for failure to sufficiently allege a corrective disclosure, the second amended complaint included additional

allegations that the SEC had not disclosed information about its BofI investigation in response to previous FOIA requests. Plaintiffs supported these allegations with copies of the agency's FOIA request logs. The logs showed that five other BofI-related FOIA requests were submitted to the SEC, "granted" at least in part, and listed as "closed" prior to the October 25, 2017 *Post* article.

The district court concluded that the second amended complaint's allegations regarding the earlier FOIA requests were too speculative to demonstrate that the information in the October 25, 2017 *Post* article had not been previously disclosed. Though we conclude that the allegations in plaintiffs' first amended complaint were sufficient to plausibly allege loss causation, we consider the allegations in the second amended complaint to determine whether they somehow rendered the initial allegations implausible. We conclude they do not.

The FOIA logs do not reveal what information the five earlier requests sought, much less whether any information relating to the SEC investigation was produced in response to them. If responsive information was produced, the logs do not show whether it was redacted pursuant to one of the FOIA exemptions. The logs merely show that between the date of the alleged misstatement and the date of the corrective disclosure, five FOIA requests relating to BofI were submitted to the SEC, granted at least in part, and recorded as "closed."

The parties debate what to infer from the "closed" status of the other BofI-related FOIA requests, but the more important question is what information was requested. The FOIA request logs do not say. In a column titled, "Request

Description," the logs simply reflect that each of the five requests concerned BofI. The requests could have been inquiries directed at different information about BofI, and because government agencies responding to FOIA requests are required only to "conduct a reasonable search to find any documents responsive to the request," *Hamdan*, 797 F.3d at 770, it is entirely possible that the SEC could have looked for, but not found, information responsive to the earlier FOIA requests marked "granted" and "closed." The record does not allow the conclusion that any of the other BofI-related FOIA requests resulted in the disclosure of information about an SEC investigation of BofI.[4]

**vi.**

BofI asks us to affirm the district court's loss-causation ruling on the alternative ground that the October 25, 2017 *Post* article was not actually "corrective" of BofI's statement that it had no knowledge of a money laundering investigation. We decline to do so.

"[T]o establish proximate causation, the plaintiff must prove that when the relevant truth about the fraud began to

---

[4] Even if information concerning the SEC investigation had been disclosed pursuant to an earlier FOIA request, such disclosure may not have foreclosed plaintiffs' theory of loss causation. A bright-line rule of this type would fail to recognize that "a single market can process different kinds of information more or less efficiently, depending on how widely the information is disseminated and how easily it is understood." *Halliburton II*, 573 U.S. at 271; *see also Meyer*, 710 F.3d at 1198 n.9 ("[W]e might be willing to countenance some lag in the market's processing of the information contained in these public sources . . . ."). We do not reach this issue because it is not necessary to resolve the instant appeal.

leak out, it caused the price of stock to depreciate and thereby proximately cause[d] the plaintiff's economic loss." *Lloyd*, 811 F.3d at 1210 (quoting *Pub. Emps. Ret. Sys. of Miss., P. R. Teachers Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014)). "To be corrective, the disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company." *Id.* (quoting *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009)).

BofI contends that the October 25, 2017 *Post* article was not corrective because it did not relate back to BofI's denial of any knowledge about an investigation. The March 2017 *Post* article that prompted BofI's denial described a money-laundering investigation led by the Department of Justice. It noted that the SEC was "in the probe" and that the investigation involved the bank's loans to foreign nationals. Though BofI denied knowledge of any such investigation, the October 25, 2017 *Post* article disclosed that BofI had indeed been the subject of a 16-month investigation by the SEC. It also stated that "[t]he probe was focused on alleged conflicts of interest, auditing practices, and loans made to two entities," and that the information acquired through FOIA—including the existence of the SEC investigation—"confirmed two earlier reports by The Post that the bank was under investigation." Although the October 25, 2017 *Post* article did not precisely mirror BofI's denial, its report that the SEC had investigated BofI for money laundering sufficiently related back to BofI's statement that it had no knowledge of a money laundering investigation involving the SEC. *See Lloyd*, 811 F.3d at 1210. We conclude that plaintiffs adequately alleged the October 25, 2017 *Post* article was corrective of BofI's statement.

**vii.**

Plaintiffs separately argue that their securities fraud claims are supported by the complaint's allegation that, on April 18, 2016, BofI made a false statement in response to a whistleblower complaint. The whistleblower complaint alleged that BofI "failed to disclose loans to criminals and politically exposed persons who put the Bank at risk for violating the Bank Secrecy Act's Anti-Money Laundering Rules." Plaintiffs' complaint alleged that BofI issued a responsive press release that described the whistleblower's allegations as "disconnected from the reality of BofI's highly compliant and top-performing business." Plaintiffs further allege that the truth of the whistleblower's statement was revealed in an article that appeared on the *Seeking Alpha* website on October 26, 2016.

The district court concluded that the *Seeking Alpha* article could not constitute a corrective disclosure, and plaintiffs argue on appeal that this was error. The district court reasoned that the *Seeking Alpha* article contained only public information, and that the information did not require "specialized analysis" to be "readily digestible" by the market. We agree with the district court's conclusion, and affirm its ruling that the *Seeking Alpha* article did not constitute a corrective disclosure. The article was written by an anonymous short-seller who had invested in BofI and who stated that he "derived [his conclusions] from publicly available information"—specifically by comparing information available in public documents. The article's analysis did not require any expertise or specialized skills beyond what a typical market participant would possess, and it included the disclaimer that the author "makes no representation as to the accuracy or completeness of the

information." Indeed, the article encouraged investors to do their own research. Although we have recognized circumstances in which already-public information may qualify as a corrective disclosure for purposes of alleging loss causation, *see, e.g.*, *Gilead*, 536 F.3d at 1058, the *Seeking Alpha* article plaintiffs point to does not qualify as such.

**viii.**

Finally, BofI asks us to affirm the district court's order dismissing the complaint on the alternative ground that plaintiffs failed to adequately allege scienter. Because the district court addressed only loss causation, we limit our consideration to that issue and "follow[] the general rule [that] a federal appellate court does not consider an issue not passed upon below." *Gilead*, 536 F.3d at 1055 (alteration in original) (quoting *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 892 (9th Cir. 2008)).

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED**, with the parties to bear their own costs.