**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSEPH CURRY, Individually and on
Behalf of All Others Similarly
Situated; CITY OF MIAMI FIRE
FIGHTERS' AND POLICE OFFICERS'
RETIREMENT TRUST,
  *Plaintiffs-Appellants*,

and

MARY ADAMS, Individually and on
Behalf of All Others Similarly
Situated,
  *Plaintiff*,

v.

YELP INC.; JEREMY STOPPELMAN;
ROBERT J. KROLIK; GEOFFREY
DONAKER,
  *Defendants-Appellees*,

v.

DRU L. PIO,
  *Movant*.

No. 16-15104

D.C. No.
3:14-cv-03547-
JST

OPINION

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted September 11, 2017
San Francisco, California

Filed November 21, 2017

Before: Ronald M. Gould and Paul J. Watford, Circuit
Judges, and W. Louis Sands,[*] District Judge.

Opinion by Judge Gould

## SUMMARY[**]

### Securities Fraud

The panel affirmed the district court's dismissal, for
failure to state a claim, of a securities fraud action brought
against Yelp, Inc., and other defendants, alleging the falsity
of statements regarding the independence and authenticity of
posted Yelp reviews.

The panel held that the plaintiffs did not adequately
plead loss causation because the disclosure of consumer
complaints, without more, did not form a sufficient basis for
a viable loss causation theory. The panel also held that

---

[*] The Honorable W. Louis Sands, United States District Judge for
the Middle District of Georgia, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It
has been prepared by court staff for the convenience of the reader.

allegations of suspicious insider sales of stock without allegations of historical trading data did not create a strong inference of scienter. The panel affirmed the district court's dismissal with prejudice because amendment of the complaint as to loss causation would be futile.

## COUNSEL

Andrew S. Love (argued), Kenneth J. Black, Shawn A. Williams, and Susan K. Alexander, Robbins Geller Rudman & Dowd LLP, San Francisco, California; Stephen H. Cypen, Cypen & Cypen, Miami Beach, Florida; for Plaintiffs-Appellants.

Gilbert R. Serota (argued) and Daniel M. Pastor, Arnold & Porter LLP, San Francisco, California, for Defendants-Appellees.

## OPINION

GOULD, Circuit Judge:

Plaintiffs Joseph Curry, individually and on behalf of all others similarly situated, and Miami Fire Fighters' and Police Officers' Retirement Trust appeal the district court's dismissal with prejudice of Plaintiffs' securities fraud complaint for failure to state a claim. Plaintiffs argue that the district court erred by holding that they did not adequately plead falsity, materiality, loss causation, and scienter. Plaintiffs further argue that the district court erred by dismissing their control person claim and by denying them leave to amend. We hold that the disclosure of consumer complaints, without more, in the circumstances of

this case did not form a sufficient basis for a viable loss causation theory. We further hold that allegations of suspicious insider sales of stock without allegations of historical trading data did not, in the circumstances here, create a strong inference of scienter. We affirm the district court's dismissal of the complaint based on the elements of loss causation and scienter that were not sufficiently pled. We need not reach and do not reach Plaintiffs' arguments regarding materiality and falsity. We also affirm the district court's dismissal of the complaint with prejudice because amendment of the complaint as to loss causation would be futile under current precedent.

# I

Yelp Inc. ("Yelp") is a publicly traded company that generates revenue by selling advertising to businesses on its website. During the period from October 29, 2013 to April 3, 2014 (the "Class Period") Defendants[1] consistently stated that the reviews generated on Yelp's website were "firsthand" and "authentic" information from contributors about local businesses. On April 2, 2014, pursuant to a Wall Street Journal ("WSJ") Freedom of Information Act request, the Federal Trade Commission ("FTC") disclosed more than 2,000 complaints from businesses claiming that Yelp had manipulated reviews of their services. Some complaints alleged that Yelp salespersons would remove good reviews or promote bad reviews when businesses did not agree to advertise with them. Other complaints reported that bad

---

[1] Defendants are Yelp Inc. and Jeremy Stoppelman (Yelp's Chief Executive Officer during the Class Period), Robert Krolik (Yelp's Chief Financial Officer during the Class Period), and Geoffrey Donaker (Yelp's Chief Operating Officer during the Class Period) (collectively "Individual Defendants").

reviews were suppressed for companies that advertised with Yelp. That afternoon, after the market had closed, the WSJ released an article citing the FTC's disclosure and noting that Yelp's stock had declined 6% after the FTC made its disclosure of these complaints.

## A

Plaintiffs sued Defendants alleging that Yelp's statements regarding the independence and authenticity of posted reviews were materially false; that Defendants knew the statements were false; and that the revelation of their falsity through FTC disclosures and news articles caused a drop in Plaintiffs' stock value. The district court consolidated two cases and appointed City of Miami Fire Fighters' and Police Officers' Retirement Trust as Lead Plaintiff.

Defendants filed a motion to dismiss Plaintiffs' initial class-action complaint, which the district court granted, concluding that Plaintiffs did not sufficiently allege falsity, materiality, causation, or scienter. The district court concluded that Plaintiffs did not sufficiently plead materiality because the information revealed in the WSJ article and the FTC disclosures had previously been disclosed by Yelp in its Registration Statement and other SEC filings. The district court concluded that Plaintiffs did not allege falsity because most of the consumer complaints, eighteen out of twenty-five, did not allege that Yelp sought payment in exchange for good reviews. The district court concluded that Plaintiffs did not sufficiently allege loss causation because the decline in Yelp's stock was "attributable to market speculation about whether fraud ha[d] occurred," and it concluded that speculation of fraud could not form the basis for a viable loss causation theory. The district court concluded that Plaintiffs did not allege

scienter with particularity because Plaintiffs did not allege that Yelp executives were personally involved in ensuring the authenticity of Yelp's reviews. The district court further concluded that "unusual insider sales" of stocks could not show scienter because Plaintiffs did not supply trading history. The district court also concluded that Plaintiffs' Section 20(a) derivative claim likewise failed. For these and related reasons, the district court dismissed Plaintiffs' original consolidated class action complaint but granted Plaintiffs leave to amend.

**B**

Plaintiffs then filed their First Amended Class Action Complaint for Violations of the Federal Securities Laws. Defendants again moved to dismiss, and the district court once more granted the motion to dismiss. The district court held that Plaintiffs did not sufficiently plead material falsity. The district court reasoned that Plaintiffs' new allegations did not implicate the veracity of Defendants' previous statements that Yelp reviews, by and large, are "authentic" and "firsthand" because Defendants had previously acknowledged that Yelp's screening technology was imperfect. The district court specifically found that "no reasonable investor could have understood Defendants' statements to mean that all Yelp reviews were authentic," and therefore, the FTC complaints did not alter the total mix of information available to the market. The district court also found that the WSJ article could not have affected the total mix of information in the market because it was published after the market had closed and Yelp's stock price had already declined. Finally, the district court found that the FTC disclosure did not affect the total mix of information because it was unclear when the FTC made its disclosure and what the FTC disclosed.

The district court further concluded that Plaintiffs' allegations of consumer complaints did not prove that Defendants' statements denying manipulation of Yelp reviews were false. Although the Plaintiffs had included nine more consumer complaints, the district court found that the complaints still only expressed business owners' inferences about Yelp's manipulation of reviews, and were not proof of wrongdoing. Plaintiffs also argued that Yelp's statements regarding future business prospects were false or misleading, but the district court rejected this argument because Defendants' claims as to the authenticity of the reviews did not contribute to Yelp's projected numbers. The district court held that the statements were not materially false because Plaintiffs did not allege that Defendants' optimistic statements about Yelp's prospects were contradicted by undisclosed facts that Defendants already knew.

The district court also concluded that Plaintiffs did not sufficiently allege loss causation because Plaintiffs did not allege that there was fraud on the market, only potential fraud. The district court found that Plaintiffs did not supply allegations connecting the stock drop to the FTC disclosures or to the WSJ article because the WSJ article came out after the stock drop occurred. The district court concluded that Plaintiffs did not sufficiently allege that Yelp's executives had the requisite scienter. The district court specifically held that Plaintiffs' reliance on management's general awareness of day-to-day workings did not show that they had knowledge and control over Yelp's content. The district court also held that Defendants' sales of Class A+B shares did not support an inference of scienter because Plaintiffs again did not provide any historical trading data showing the stock sales of insiders before the Class Period for comparison, even though the district court had noted that

same deficiency in its prior order granting the first motion to dismiss. The district court dismissed Plaintiffs' derivative Section 20(a) claim because their Section 10(b) claim failed. Finally, the district court denied Plaintiffs' new motion for leave to amend, reasoning that further amendment would be futile because the first amended complaint did not cure the previously cited deficiencies.

Plaintiffs next filed a motion for reconsideration, which included a proposed second amended complaint. The district court denied Plaintiffs' motion for reconsideration, and this appeal timely followed.

## II

We have jurisdiction to decide this appeal under 28 U.S.C. § 1291. *In re Atossa Genetics, Inc. Sec. Lit.*, 868 F.3d 784, 793 (9th Cir. 2017). We review *de novo* challenges to a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *New Mexico State Inv. Council v. Ernst & Young, LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). On review, we consider the materials incorporated by reference in the complaint, and judicially noticed matters. *Id.* We review the denial of leave to amend a complaint for abuse of discretion. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009).

## III

The elements that must be pleaded to state a claim for securities fraud are strenuous but well established. To state a claim for violation of Rule 10b-5, a plaintiff must allege a material misrepresentation or omission of fact, scienter, a connection with the purchase or sale of a security, transaction and loss causation, and economic loss. *Zucco Partners*, 552 F.3d at 990. "A securities fraud complaint

under § 10(b) and Rule 10b-5 must satisfy the dual pleading requisites of Federal Rule of Civil Procedure 9(b) and the PSLRA." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). We "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). A dismissal is inappropriate unless the complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We affirm the decision of the district court because we conclude Plaintiffs did not adequately plead loss causation or scienter.

## A

Plaintiffs contend that they sufficiently plead loss causation and that the district court erred by surmising that "the market merely became aware of the possibility that further investigations by the FTC could later establish that Defendants' denials were false or misleading." We have held that "[t]o prove loss causation, the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff." *Ambassador Hotel Co., Ltd. v. Wei–Chuan Inv.*, 189 F.3d 1017, 1027 (9th Cir. 1999); *see also Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014).

In their first amended complaint, Plaintiffs allege that Defendants' misrepresentations, including false denials of "extortion-like business practices," caused Yelp's stock to trade at artificially inflated prices. Plaintiffs allege that a WSJ article and a SunTrust Report said that Yelp stock was down 6% on the afternoon the FTC made its disclosures, that 1,344 of the 2,046 complaints the FTC disclosed had not been previously disclosed and corroborated each other, and

that the FTC disclosures showed that the rate of complaints had increased. Plaintiffs allege that disclosure of the complaints and the release of the WSJ article caused the drop in Yelp's stock price as reported by various sources.

Although a securities fraud plaintiff need not allege an outright admission of fraud to survive a motion to dismiss, the "mere 'risk' or 'potential' for fraud is insufficient to establish loss causation." *Loos v. Immersion, Corp.*, 762 F.3d 880, 889 (9th Cir. 2014), *as amended* (Sept. 11, 2014) (internal citation omitted). In *Loos*, we held that the mere announcement of an investigation was insufficient to establish loss causation because it does not "'reveal' fraudulent practices to the market." *Id.* at 890. Here, Plaintiffs rely on even less, as they only cite customer complaints to the FTC without a subsequent investigation. *Loos* makes clear that Plaintiffs' allegations are insufficient to plead loss causation. Several cases from the United States Supreme Court and from our court make clear that in the context of alleged securities fraud where the PSLRA and FRCP 9(b) impose heightened requirements, the element of loss causation cannot be adequately made out merely by resting on a number of customer complaints and asserting that where there is smoke, there must be fire. Rather, for Plaintiffs in this securities fraud context, there must be particularized allegations of fraud and strong evidence of scienter or culpable intent of the corporate managers involved. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (requiring that "a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss"); *see, e.g.*, *Loos*, 762 F.3d at 890 n.3 ("[T]he announcement of an investigation, 'standing alone and without any subsequent disclosure of actual wrongdoing, does not reveal to the market the pertinent truth of anything.'") (internal citation

omitted); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) (noting that Supreme Court and Ninth Circuit precedent do not "support the notion that loss causation is pled where a defendant's disclosure reveals a 'risk' or 'potential' for widespread fraudulent conduct").

We hold that in the circumstances of this case disclosure of customer complaints that refer to allegations of fraud, without more, are insufficient to allege loss causation. The district court did not err in so concluding.

**B**

Plaintiffs contend that their allegations about Yelp executives' knowledge of core operations created a strong inference that Defendants were at least reckless in their statements about Yelp reviews. Plaintiffs further contend that Defendants' high volume of insider stock sales supports a strong inference of scienter. A plaintiff's complaint must state facts, with particularity, with respect to each act or omission alleged, giving rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C.A. § 78u-4(b)(2)(A); *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008). A securities fraud complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *see also New Mexico State Inv. Council*, 641 F.3d at 1095. "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences' . . . Yet the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent

and compelling." *Tellabs*, 551 U.S. at 324 (internal citations omitted); *see also S. Ferry*, 542 F.3d at 784.

"[W]e conduct a two-part inquiry for scienter: first, we determine whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegation is sufficient, we conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *New Mexico State Inv. Council*, 641 F.3d at 1095.

**1**

Plaintiffs allege that insiders, including Individual Defendants, unloaded more than 1.1 million shares of their Yelp stock at artificially inflated prices receiving insider proceeds in excess of $81.5 million. Individual Defendants Stoppelman, Krolik, and Donaker sold 132,350, 35,000, and 117,640 shares, respectively, during the Class Period. For sales of stocks to be suspicious, they must be "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)) (emphasis omitted). Here, even after the district court pointed out that it needed evidence of Individual Defendants' prior trading history, Plaintiffs in their first amended complaint made no allegations and gave no evidence of Individual Defendants' prior trading history.[2] *See also Police Ret. Sys. of St. Louis*

---

[2] The Form 4s in the record indicate that the vast majority of Individual Defendants' stock sales were made pursuant to a Rule 10b5-

*v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1064 (9th Cir. 2014) (finding allegations of scienter based on sales of stock insufficient "because the complaint contains no allegations regarding the defendants' prior trading history, which are necessary to determine whether the sales during the Class Period were 'out of line with' historical practices"). Without such allegations, the district court correctly determined that Plaintiffs' complaint failed to plead that Individual Defendants' sales of stock were "dramatically out of line with prior trading practices." *See Ronconi*, 253 F.3d at 435. Plaintiffs' allegations related to the sale of stock are not sufficient to create a strong inference of scienter.

## 2

Plaintiffs also allege that Defendants knew that it was not true that all Yelp's reviews were based on firsthand knowledge or were authentic because (1) Defendants used filtering software to "keep it at a level playing field", (2) Defendants used scouts to build interest in new locales including writing initial business reviews, and (3) Defendants had community mangers who were responsible for creating content and encouraging traffic for different cities and towns. Plaintiffs allege that these business practices show a policy as evidenced by the large number of complaints by businesses throughout the country and the number of different Yelp salespersons involved. Plaintiffs allege that Defendants knew or deliberately disregarded that "when local businesses declined the Company's overtures to purchase advertising, the Company would often retaliate by removing or filtering their good reviews and displaying only negative" reviews, and that the

---

1 plan, which allows for stock sales over a predetermined period without concern for the market.

"Company would often offer to suppress negative reviews for a fee" and did not disclose this business practice.

However, the rule is settled that "[a]s a general matter, 'corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud' or other allegations supporting scienter." *S. Ferry*, 542 F.3d at 784–85 (quoting *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 534 F.3d 1068, 1087 (9th Cir. 2008)). "Allegations regarding management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements may also create a strong inference of scienter when made in conjunction with detailed and specific allegations about management's exposure to factual information within the company." *Id.* at 785. Although Plaintiffs' allegations are numerous, none states that an Individual Defendant had specific information regarding employee use of review manipulation when trying to sell advertising. *See Zucco*, 552 F.3d at 1000–01 (requiring "specific admissions from top executives that they are involved in every detail of the company and that they monitored portions of the company's database" or that "the information misrepresented is readily apparent to the defendant corporation's senior management"). Plaintiffs do not allege that Individual Defendants personally oversaw reviews or had notice of how some advertising was garnered. *S. Ferry*, 542 F.3d at 784 ("Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard."). According to a Wells Fargo Securities, LLC report, as of December 2013,

Yelp had 53 million reviews on its platform. Two thousand complaints represented one complaint in every 26,500 reviews. We conclude that in this case, complaints regarding such a small portion of Yelp's business do not support a strong inference of scienter.

Even taken together, Plaintiffs' allegations do not support a strong inference of scienter. None of the allegations forms a nexus between the wrongful behavior and Individual Defendants' knowledge. Plaintiffs' allegations are not sufficient to allege scienter under the demanding standards set for claims of federal securities law violations.

## C

Plaintiffs contend that the district court's dismissal of their § 20(a) claim should be reversed because the underlying dismissal of their § 10(b) claim was in error. But because we have concluded that the district court did not err by dismissing the underlying § 10(b) claim, Plaintiffs' § 20(a) claim also fails. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). We affirm the district court's dismissal of Plaintiffs' § 20(a) claim.

## D

Finally, we review denial of leave to amend for abuse of discretion. *Loos*, 762 F.3d at 886. When a district court determines that further amendment would be futile, "we will affirm the district court's dismissal on this basis if it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Zucco Partners*, 552 F.3d at 1007 (internal quotation marks and citation omitted). We conclude that the district court did not abuse its discretion here. In the district court's first order dismissing Plaintiffs'

complaint with leave to amend, it pointed out deficiencies in Plaintiffs' pleadings of materiality, falsity, loss causation, and scienter.  Despite these explicit warnings, Plaintiffs' first amended complaint failed to remedy the deficiencies.  *Loos*, 762 F.3d at 891 ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to [his] claims, the district court's discretion to deny leave to amend is particularly broad." (alterations in original)) (quoting *Zucco Partners*, 552 F.3d at 1007).  We conclude that it is clear that further amendment on the issue of loss causation would be futile because Plaintiffs' proposed second amended complaint realleges facts regarding the FTC complaints and market analyst reports as their basis for loss causation without providing additional facts that demonstrate fraud.  Our current circuit precedent makes clear that market speculation about fraud, without more, is insufficient to plead loss causation.  *Loos*, 762 F.3d at 890; *see, e.g.*, *Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 608.  Even the unpublished decision Plaintiffs relied on during oral argument, *Cutler v. Kirchner*, states, "[o]ur traditional approach tests whether a statement caused loss by asking whether 'subsequent public disclosures' revealed or at least suggested the truth.'" 2017 WL 3530893 *1 (9th Cir. Aug. 17, 2017) (internal citation omitted). Plaintiffs have not alleged and cannot allege anything beyond the FTC's disclosure of complaints.  As discussed above, that alone is insufficient to support loss causation under *Loos*.  The district court did not abuse its discretion by concluding that further amendment would be futile.

## IV

We **AFFIRM** the district court's dismissal with prejudice of Plaintiffs' securities fraud complaint because

Plaintiffs did not adequately plead loss causation and scienter.

**AFFIRMED**.