

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> 450 S. WESTERN AVE., LLC, <br>       Debtor. | BAP No. CC-21-1116-LFS <br><br> Bk. No. 2:20-bk-10264-ER |
| PHILMONT MANAGEMENT, INC., <br>       Appellant, <br> v. <br> 450 S. WESTERN AVE., LLC, <br>       Appellee. | Adv. No. 2:21-ap-01030-ER <br><br> **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Ernest M. Robles, Bankruptcy Judge, Presiding

APPEARANCES:

Jesse Sequoia Finlayson of Finlayson Toffer Roosevelt & Lilly LLP argued for appellant; Moriah Douglas Flahaut of Arent Fox LLP argued for appellee.

Before: LAFFERTY, FARIS, and SPRAKER, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

## INTRODUCTION

Philmont Management, Inc. ("Philmont"), appeals the bankruptcy court's order dismissing with prejudice its adversary proceeding against

1

chapter 11[1] debtor 450 S. Western Ave., LLC ("Debtor"). Philmont sought a determination of the validity of its mechanic's lien against the Debtor's real property, which arose from tenant improvements Philmont constructed in 2017. The bankruptcy court dismissed Philmont's complaint with prejudice under Civil Rule 12(b)(6), applicable via Rule 7012, because it found that Philmont had not timely perfected its lien under California law, nor had it preserved its lien by filing a timely notice under § 546(b); thus, the complaint did not state a claim upon which relief could be granted, and amendment would be futile.

We AFFIRM. We publish to address an issue we declined to decide in *Village Nurseries v. Gould (In re Baldwin Builders)*, 232 B.R. 406, 412-13 (9th Cir. BAP 1999): we hold that the time for filing a notice under § 546(b) is not tolled by § 108(c).

## FACTS

Debtor filed a chapter 11 bankruptcy petition on January 10, 2020. Debtor's primary asset was a three-story, 80,316-square-foot shopping center located at South Western Avenue and 5th Street in Los Angeles, California (the "Property"), valued on Debtor's schedules at $63.9 million.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

## A. The adversary complaint

In February 2021, Philmont filed an adversary complaint seeking a determination of the validity, priority, or extent of its mechanic's lien on the Property. The relevant allegations of the complaint are paraphrased as follows:

- In 2017, Debtor contracted with Philmont to perform tenant improvements at the Property. Philmont performed the work as requested and billed Debtor $1,835,561.32 for labor and materials. Debtor's chief financial officer and chief operating officer informed Philmont that its invoices would not be paid until June 2018. When the promised payments were not received, Philmont timely recorded its mechanic's lien on July 18, 2018.[2] Complaint, ¶¶ 9-11.

- Over the next eighteen months, Debtor repeatedly reassured Philmont that the amount due under its mechanic's lien would be paid from a pending refinance of the Property. Debtor requested that Philmont not file a lawsuit to perfect its mechanic's lien because doing so would create a cloud on title and potentially jeopardize the refinance. The parties understood that Philmont would re-record its mechanic's lien if it was not paid from the refinance within 90 days of the original

---

[2] The complaint does not state when the work was completed, but the parties agree that the first recording of Philmont's mechanic's lien was timely.

recording. They further understood that Debtor would not claim the successive liens were untimely. *Id.* at ¶ 12.

- In reasonable reliance on Debtor's representations and promises, Philmont did not commence an action to foreclose its mechanic's lien against the Property and, instead, re-recorded its mechanic's lien four additional times between June 2018 and December 2019. Debtor did not object and continued to give assurances to Philmont that its lien would be paid from the refinance. In reasonable reliance on Debtor's representations and promises, Philmont recorded its fifth and final mechanic's lien against the Property on December 19, 2019 for $2,361,878.40, including statutory interest. *Id.* at ¶ 14.

- On January 10, 2020, Debtor filed a chapter 11 petition. On April 29, 2020, Philmont filed a timely Notice of Perfection of Mechanic's Lien under 11 U.S.C. § 546(c). On May 28, 2020, Philmont filed a timely Proof of Claim in Debtor's bankruptcy case, again reasserting its mechanic's lien. *Id.* at ¶¶ 15-17.

- On September 23, 2020, Debtor filed a motion to approve the sale of the Property, subject to overbids. In the sale motion, Debtor claimed for the first time—and contrary to its prior repeated assertions and requests—that Philmont's mechanic's lien was invalid and disputed. At an auction conducted on October 14, 2020, the bankruptcy court approved the sale of the

4

Property to the winning bidder for $57.5 million and thereafter entered an order approving the sale of the Property under § 363(b) and (f). Under the terms of the sale order and applicable law, all secured claims against the Property attached to the sale proceeds to the same extent, validity, and priority that existed immediately prior to the sale. The sale of the Property closed on December 4, 2020. Immediately after closing, Debtor held sale proceeds of approximately $11,419,486 in a segregated trust account subject to the remaining disputed secured claims, including Philmont's mechanic's lien. After settlement of one disputed secured claim, Philmont believes Debtor is still holding nearly $11 million in proceeds from the sale of the Property. *Id.* at ¶¶ 18-23.

- On January 27, 2021, Debtor filed a plan of liquidation and disclosure statement in which it disputed the extent, validity, or priority of Philmont's mechanic's lien.[3] *Id.* at ¶ 24.

The complaint contains one claim for relief, for the determination of the validity, priority, and extent of Philmont's lien. As part of that claim, Philmont contends that Debtor is "estopped from changing its position pursuant to applicable non-bankruptcy law." Philmont requests in its prayer for relief a judgment determining that it holds a valid and

---

[3] Debtor's plan was confirmed on April 26, 2021. Under the plan, funds sufficient to pay Philmont's claim are to be held in a reserve account.

enforceable mechanic's lien on the proceeds of the sale of the Property in the amount of $1,808,281.32 plus statutory interest from the initial due date until paid in full.

## B.    The motion to dismiss

Debtor filed a motion to dismiss the complaint with prejudice under Civil Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Debtor asserted that the allegations of the complaint showed that Philmont had not taken steps to maintain perfection of its lien by filing an enforcement action within the statutory time frame. Debtor also contended that equitable principles could not be invoked to extend the deadline for filing an enforcement action. Finally, Debtor pointed out that even if the re-recording of the mechanic's lien that occurred on December 19, 2019, somehow revived the lien, Philmont's Notice of Perfection of Mechanic's Lien under § 546(b) was filed more than 90 days after that re-recording and was thus untimely.

Philmont opposed the motion to dismiss, arguing that it had alleged facts sufficient to equitably estop Debtor from asserting that the fifth and final recording of the mechanic's lien was untimely. Philmont also argued that under Ninth Circuit law it was not required to file a notice of perfection, and if it was, the time to do so was tolled under § 108(c).

Debtor filed a reply in which it argued that Philmont had not alleged facts sufficient to support an equitable estoppel claim because Philmont knew that under California law it had to file an enforcement action to

6

perfect its lien but failed to do so. Debtor also rejected the contention that Ninth Circuit law relieved Philmont from the deadline set forth in § 546(b).

After hearing argument, the bankruptcy court issued a memorandum decision and order granting Debtor's motion to dismiss with prejudice. Philmont timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in dismissing the complaint for failure to state a claim upon which relief could be granted?

Did the bankruptcy court abuse its discretion in denying leave to file an amended complaint?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's order granting a motion to dismiss for failure to state a claim under Civil Rule 12(b)(6). *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc). Under de novo review, we look at the matter anew, as if it had not been heard before, and as if no decision had been rendered previously, giving no deference to the bankruptcy court's determinations. *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

Denial of leave to amend a complaint is reviewed for abuse of discretion. *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017); *Tracht Gut,*

*LLC v. Cnty. of L.A. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 503 B.R. 804, 810 (9th Cir BAP 2014). To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

## DISCUSSION

### A. Standard on a motion to dismiss under Civil Rule 12(b)(6)

To survive a motion to dismiss under Civil Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should assume the veracity of the factual allegations "and then determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. This plausibility standard is not a probability requirement, but it does ask for more than mere possibility; if a complaint pleads facts "merely consistent with" a theory of liability, it falls short of "the line between possibility and plausibility." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). The court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

8

**B.    Deadlines for perfecting and maintaining the validity of a mechanic's lien under California law**

California statutes set the deadlines for recording and maintaining the validity of a mechanic's lien.

California Civil Code § 8412 provides:

A direct contractor may not enforce a lien unless the contractor records a claim of lien after the contractor completes the direct contract, and before the earlier of the following times:

(a)    Ninety days after completion of the work of improvement.

(b)    Sixty days after the owner records a notice of completion or cessation.

To preserve the enforceability of a timely recorded mechanic's lien, the contractor must commence an action to foreclose the lien within 90 days of recordation: "The claimant shall commence an action to enforce a lien within 90 days after recordation of the claim of lien. If the claimant does not commence an action to enforce the lien within that time, the claim of lien expires and is unenforceable." Cal. Civ. Code § 8460(a).

**C.    The bankruptcy court did not err in dismissing Philmont's complaint under Civil Rule 12(b)(6).**

**1.    Even if the December 2019 re-recording were deemed timely, the complaint fails to state a claim because Philmont's § 546(b) notice was untimely.**

The allegations of the complaint state (and Debtor does not dispute) that the July 18, 2018, recording of Philmont's mechanic's lien was timely under California Civil Code § 8412. The allegations establish that Philmont

9

failed to file a foreclosure action within the time fixed to preserve the validity and enforceability of the lien under California Civil Code § 8460(a). Philmont argues that the complaint establishes that Debtor should be equitably estopped from challenging the validity of the lien; accordingly, the fifth and final recording of its mechanic's lien on December 19, 2019, should be deemed timely. But we need not decide whether the allegations of the complaint adequately support a claim of equitable estoppel because, even if the December 2019 recording were deemed timely, those allegations lead to the conclusion that Philmont failed to give timely notice under § 546(b).[4]

That statute provides as follows:

---

[4] Although we are not deciding the issue in this appeal, we are skeptical that the complaint contained allegations sufficient to support the application of equitable estoppel or that any additional or alternative allegations would have done so. According to the complaint, the representations forming the basis for equitable estoppel were Debtor's assurances that it would pay Philmont from the refinance and that it would not contest the validity of the lien. But the allegation that Philmont did not file a foreclosure action because Debtor promised to pay Philmont from the refinance shows that Philmont was not relying on its lien but on the refinance. Moreover, equitable estoppel does not arise from a promise not to assert a known legal right. *See Steinhart v. Cnty. of L.A.*, 47 Cal. 4th 1298, 1317 (2010) ("[O]ne who acts with full knowledge of plain provisions of law and their probable effect on facts within his or her knowledge, especially where represented by counsel, may claim neither ignorance of the true facts nor detrimental reliance on the conduct of the person claimed to be estopped, two of the essential elements of equitable estoppel." (citation omitted). Nor does it necessarily arise from a promise to perform an act in the future. *See* 28 Am. Jur. 2d *Estoppel & Waiver* § 34. And even if Debtor intended to follow through on its representations at the time they were made, once it filed a chapter 11 petition and became a debtor in possession, it had a fiduciary duty to the estate's creditors to maximize recovery. *An-Tze Cheng v. K & S Diversified Invs., Inc. (In re An-Tze Cheng)*, 308 B.R. 448, 455 (9th Cir. BAP

(b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that--

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or

(B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

(2) If--

(A) a law described in paragraph (1) requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and

(B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition;

such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement.

In other words, if commencement of an action is required to perfect, or to maintain or continue perfection of an interest in property, and that action has not been commenced pre-petition, the claimant may perfect or maintain or continue perfection, i.e., preserve the enforceability of its perfected lien, "by giving notice within the time fixed by such law for such seizure or such commencement." As noted, Philmont re-recorded its mechanic's lien for the last time on December 19, 2019. Even if that

2004). Here, that required Debtor to challenge the enforceability of Philmont's lien.

11

recording were deemed timely, under "generally applicable law"—here, California Civil Code § 8460(a)—Philmont had 90 days from that date, or March 18, 2020, to file an enforcement action.

Debtor filed its chapter 11 petition during that 90-day period. Accordingly, Philmont was stayed from filing an enforcement action. § 362(a)(4); *In re Baldwin Builders*, 232 B.R. at 412-13. Section 546(b) provides an alternative: giving notice within that same time period. Philmont did not do so. It filed its § 546(b) notice on April 29, 2020, after the statutory deadline. As the bankruptcy court found, this fact is fatal to Philmont's claim.

**2.      The time to give notice under § 546(b) is not tolled by § 108(c).**

Philmont argues that the time to file a notice under § 546(b) is tolled by § 108(c), which suspends the time for commencing a civil action in a non-bankruptcy court so long as that time has not expired pre-petition.[5] Philmont relies on *Miner Corp. v. Hunters Run Ltd. Partnership (In re Hunters*

---

[5] Section 108(c) provides, in relevant part:

Except as provided in section 524 of this title, if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . , and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect

12

*Run Ltd. Partnership)*, 875 F.2d 1425 (9th Cir. 1989). But that reliance is misplaced. It is true that in *Hunters Run*, the Ninth Circuit held that § 108(c) tolled the period for filing an enforcement action to preserve a mechanic's lien under Washington law. Philmont asserts that "the analysis here is exactly the same," but that is true only to a point. When *Hunters Run* was decided, § 546(b) permitted giving notice in lieu of commencing an action to perfect a lien, but not to maintain or continue perfection. In 1994, five years after *Hunters Run* was decided, Congress amended § 546(b) to include the filing of a notice under that section not only to perfect a lien, but also to maintain or continue perfection of a lien. Accordingly, despite its holding, the analysis in *Hunters Run* actually supports the conclusion that § 108(c) does not toll the time for giving notice under § 546(b).

In *Hunters Run*, the appellant, Hand, had perfected his mechanic's lien pre-petition under Washington law by recording it; like the California statute at issue here, the applicable Washington statute required the filing of a foreclosure action within a certain time (eight months), or the lien would become unenforceable. 875 F.2d at 1426 n.2. As in this case, Hand did not file a foreclosure action before the debtor filed its bankruptcy case, and the period for doing so expired during the pendency of the case. In ruling on the debtor's request for a determination of the validity of Hand's lien, the bankruptcy court held that the lien had expired and was no longer enforceable; the district court affirmed.

to such claim.

13

The Ninth Circuit Court of Appeals reversed and remanded. It rejected Hand's argument that filing a foreclosure action constituted "perfection" of a lien, i.e., that it was the second step in a two-step perfection process. Rather, the court concluded that, under Washington law, the lien had been perfected pre-petition, and the Washington statute that required the filing of a foreclosure action dealt with enforcement, not perfection. Accordingly, the filing of a foreclosure action was prohibited by the automatic stay under § 362(a)(4). It further held that filing a notice under § 546(b) would have been unavailing because, at the time *Hunters Run* was decided, that statute authorized only the filing of a notice to **perfect** a lien, not the filing of a notice to **maintain or continue the perfection** of a lien.

Because the filing of a foreclosure action was prohibited by the automatic stay, and because § 546(b) did not provide the alternative of filing a notice to maintain or continue perfection of a lien, the *Hunters Run* court concluded that § 108(c) tolled the time to file a foreclosure action. *Id* at 1429.

Importantly, the court observed that had Hand been eligible to perfect his lien by invoking § 546(b), he could have done so without violating the automatic stay or triggering the tolling provision of § 108(c):

> The question, therefore, is whether section 546(b) would have permitted Hand to commence his foreclosure suit against Hunters Run as an "act to perfect an interest in property" for

14

the purposes of section 546. If it would have, then neither section 362(a)(4) nor section 108(c) could have applied.

. . . .

[Section 546(b)] allows creditors with certain types of liens to avoid the potential prejudice of section 362's automatic stay by allowing for post-bankruptcy-petition perfection of these liens. . . . [I]f [appellant] had not recorded his lien under RCW 60.04.060 before the bankruptcy petition was filed, then in spite of section 362(a)(4)'s language staying perfection of liens he could have filed notice of his lien with the bankruptcy court after the petition was filed because section 546(b) permits him to do so.

*Id.* at 1428. In other words, had § 546(b) permitted giving notice as an alternative to filing a foreclosure action to maintain or continue perfection of a lien, § 362(a)(4) would not have been implicated, and § 108(c) would not have tolled the time for doing so.

This Panel's opinion in *Baldwin Builders* makes clear that after the 1994 amendments to the Code, a lienholder that is required to file a foreclosure action to maintain or continue the enforceability of its lien must instead give notice under § 546(b). The lienholder in that case recorded mechanic's liens pre-petition pursuant to California law. It then filed post-petition foreclosure actions in state court to maintain the liens, but it failed to provide the notice required by § 546(b). The bankruptcy court ruled that the liens were invalid. We affirmed. We concluded that, despite the 1994 amendment to § 362(b)(3), which added an exception to the automatic stay for any act to maintain or continue the perfection of a lien, "[n]othing in the

15

1994 amendments to §§ 362 and 546 suggests the Ninth Circuit's characterization of a suit as enforcement, not perfection, is no longer valid." 232 B.R. at 412. We held that § 546(b), as amended in 1994, "unambiguously mandates that, if commencement of an action is required to maintain or continue perfection, notice shall be given instead." *Id.* at 411. Because the lienholder had failed to provide adequate notice under § 546(b) within the requisite time period, we held that the liens were no longer valid. *Id.* at 415. We declined to decide whether § 108(c) tolled the time for giving notice under § 546(b) because the parties had not adequately presented the issue to the bankruptcy court. *Id.*

Here, however, the § 108(c) issue was raised and ruled upon by the bankruptcy court. And we agree with that court that § 108(c) does not toll the time to give notice under § 546(b). Ordinarily, when the filing of a civil action under nonbankruptcy law is prohibited by the automatic stay, § 108(c) operates to toll the expiration of the period for doing so. But where the Bankruptcy Code provides an alternative to filing a civil action, as it does under § 546(b), neither § 362(a) nor § 108(c) are applicable. *See Hunters Run*, 875 F.2d at 1428. Put another way, while the filing of a foreclosure action is prohibited by the automatic stay, § 546(b) provides an alternative—the giving of notice—that does not violate the stay.

16

Accordingly, § 108(c) is inapplicable to the time for giving notice under § 546(b).[6]

Philmont argues that *Baldwin Builders* was wrongly decided. It focuses on the fact that in that case, the lienholder was attempting to **maintain** the perfection of its lien rather than to perfect it. Philmont erroneously asserts that California law does not require the commencement of a foreclosure suit to maintain the perfection of a lien, and that California Civil Code § 8460(a) deals exclusively with enforcement. Philmont thus contends that *Hunters Run*'s holding that § 108(c) tolls the deadline for filing a foreclosure suit is binding here.

But Philmont's critique is misguided. California Civil Code § 8460(a) does deal with enforcement. But it is also the mechanism by which a lienholder may preserve its lien, i.e., it is a law that requires "commencement of an action to accomplish . . . maintenance or continuation of perfection of an interest in property." § 546(b)(2)(A). Thus it is precisely the type of "generally applicable law" addressed by § 546. Accordingly, nothing in *Baldwin Builders* is inconsistent with *Hunters Run*; both cases involved acts to maintain the enforceability of a mechanic's lien.

---

[6] It would make no sense for § 108(c) to toll the deadline specified in § 546(b). If the latter statute were not in the Code, the lienholder could simply wait for the automatic stay to terminate and then file its foreclosure action within 30 days. That is exactly what would occur if § 108(c) applied to toll the time for giving notice under § 546(b). Accordingly, such an interpretation would render § 546(b) meaningless.

The only difference is that the *Baldwin Builders* analysis took into account the 1994 amendments to the Bankruptcy Code.

**D.    The bankruptcy court did not abuse its discretion in denying leave to amend the complaint.**

The bankruptcy court denied leave to amend the complaint because Philmont's failure to allege a timely § 546(b) notice was fatal to its claim. We see no abuse of discretion in that ruling. For the reasons explained above, no amendment could cure the fact that Philmont's § 546(b) notice was untimely. *See Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987) ("[C]ourts have discretion to deny leave to amend a complaint for 'futility,' and futility includes the inevitability of a claim's defeat on summary judgment." (citations omitted)).

## CONCLUSION

Under the applicable statutes, Philmont's lien is no longer enforceable. Even if the December 19, 2019, re-recording were deemed timely, Philmont's notice under § 546(b)(2) was untimely.

For these reasons, the bankruptcy court did not err in dismissing the complaint with prejudice. We AFFIRM.